UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **JENNIFER M.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Case No. 24-2160 |

## ORDER

Plaintiff Jennifer M. ("Plaintiff") seeks review under sentence four of 42 U.S.C. § 405(g) of the Social Security Administration's denial of her application for disability insurance benefits. After reviewing the record, administrative transcript, and the parties' briefs, the court finds that the Commissioner's decision should be remanded.

On judicial review, the district court will "uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted). The Supreme Court has emphasized that substantial evidence "means — and

1

means only—relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation marks omitted).

The ALJ found Plaintiff had the following severe impairments: diabetes mellitus; obesity; anemia; degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral hips; irritable bowel syndrome (IBS); migraine headaches; major depressive disorder; and generalized anxiety disorder. (R. 14). The ALJ then assessed Plaintiff's RFC and found:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally crawl; cannot climb ladders, ropes, or scaffolds; can frequently crouch, kneel, stoop, and climb ramps and stairs; can understand, remember, and carry out simple instructions; can use judgment to make simple work-related decisions; can deal with occasional changes in a routine work setting; and cannot interact with the public as part of job duties.

(R. 17-18).

## I.  Analysis

Plaintiff argues the court should reverse the ALJ's decision and remand the case for three reasons. First, Plaintiff argues the ALJ did not explain how she assessed Plaintiff's allegations of severe anemia and migraines or how they were accounted for in the RFC. Second, Plaintiff argues the ALJ did not build an accurate and logical bridge from the evidence to her conclusion that Plaintiff's pain allegations were not consistent with the evidence. Third, Plaintiff argues the ALJ improperly rejected the opinions of state agency psychologists that Plaintiff could perform only one to two step tasks.

### A. Anemia and Migraines

Plaintiff argues the ALJ failed to include limitations in the RFC that account for Plaintiff's severe impairments of anemia and migraines and failed to explain how the RFC accounts for those impairments. Also, Plaintiff argues the ALJ failed to explain how she assessed Plaintiff's allegations regarding her anemia and migraines.

Here, at step 2, the ALJ found Plaintiff's anemia and migraines were severe impairments. When assessing Plaintiff's RFC and subjective symptoms, the ALJ noted that Plaintiff testified that she had anemia, which caused "fatigue, dizziness, and headaches." She further noted that Plaintiff stated "her anemia is treated with iron infusions, which have been helpful." The ALJ concluded that Plaintiff's "anemia has been successfully treated with periodic iron infusions with good results."

The ALJ's analysis suggests Plaintiff's anemia did not limit Plaintiff in any significant way. This is inconsistent with the ALJ's finding that Plaintiff's anemia was a severe impairment, which means it significantly limited Plaintiff's ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). It is also inconsistent with the fact that Plaintiff reported some fatigue to providers despite the treatment, which the ALJ did not address. (R. 291, 480, 502, 560, 1265, 1276).

These inconsistencies are prejudicial because the VE stated a hypothetical person with Plaintiff's RFC would only be allowed to be off task 10% of the workday. (R. 57). While Plaintiff reported the anemia treatment was helpful, the ALJ failed to explain her conclusion that Plaintiff's "fatigue was mild enough that Plaintiff could last an entire workday on-task. Without this explanation, a reviewing court cannot be sure if or how

Plaintiff's fatigue was accounted for in his RFC." *Bradley B. v. Saul*, 2020 WL 4452047, at *14 (C.D. Ill. Aug. 3, 2020) (citing SSR 96-8p).

As to Plaintiff's migraines, the ALJ acknowledged that Plaintiff testified "she experiences headaches multiple times per week, noting that a headache typically lasts for 24 hours, but can go on for up to 11 days." The ALJ noted Plaintiff's testimony that her migraines were "managed with medication that she takes on an as needed basis" and that she "estimated taking that medication at least twice per month" for "particularly bad migraines." The ALJ concluded that Plaintiff's migraine pain had been "conservatively managed" with medication.

"If a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month could be disabling." *Michelle L. M. v. Kijakazi*, 2023 WL 3835583, at *9 (S.D. Ind. June 6, 2023). "For this reason, it is generally important for an ALJ to include an absenteeism rate when determining the RFC of a claimant who suffers from migraines." *Id.* (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). In addition, "[w]hen an ALJ accepts that a claimant suffers from migraines but concludes that she is not disabled, there are generally two possible explanations. Either the ALJ found that the claimant did not suffer migraines at a disabling frequency, or the migraines were not of a disabling severity (*i.e.*, the ALJ found that the claimant could work while suffering a migraine)." *Gould v. Kijakazi*, 2022 WL 541511, at *3 (E.D. Wis. Feb. 23, 2022). "Thus, to assess whether a claimant's migraines preclude substantial gainful

4

activity, it is necessary to assess both how often the claimant suffers migraines and how severe those migraines are." *Krevs v. Saul*, 2020 WL 58068, at *2 (E.D. Wis. Jan. 6, 2020)

Here, the ALJ asked the VE about potential employers' acceptance of absenteeism or off-task time at the hearing, and the VE stated that typically, employees could be absent one time a month and that only 10 percent off-task time was allowed. (R. 57). The ALJ's analysis, however, does not include any discussion of absenteeism or off-task time even though Plaintiff testified that she experiences headaches multiple times per week and that they typically last for 24 hours but can last up to 11 days.

It is unclear how the ALJ concluded Plaintiff would not miss more than one day of work per month or require no more than 10 percent off-task time. Perhaps the ALJ concluded that because the migraine pain was "conservatively managed," neither limitation was warranted based on the record. However, "this Court is unable to ascertain whether the ALJ adequately considered these two potential RFC limitations. Without any actual discussion, the Court is prevented from conducting any sort of meaningful review." *Michelle L. M. v. Kijakazi*, 2023 WL 3835583, at *10 (S.D. Ind. June 6, 2023).

Thus, remand is required for the ALJ to articulate how the RFC accounts for Plaintiff's severe impairments of anemia and migraines and to explain how she assessed Plaintiff's allegations regarding her anemia and migraines.

### B. Pain Allegations

Here the ALJ found that Plaintiff's pain complaints were not entirely consistent with the medical evidence because they had "been conservatively managed with medication and a minimal amount of physical therapy, with generally good results,

5

physical examinations have been mostly unremarkable, and the claimant has maintained a fairly active lifestyle, including babysitting her young grandchild and visiting family out of state." Plaintiff argues that, due to numerous errors, the ALJ did not build an accurate and logical bridge from the medical evidence to her conclusion regarding Plaintiff's pain complaints.

First, Plaintiff argues the ALJ misconstrued the report of consultative examiner Dr. Taiwo. Here, the ALJ explained that when Dr. Taiwo examined Plaintiff, she was able to get on and off the examination table without difficulty. Plaintiff was able to walk more than 50 feet without support, and her gait was non-antalgic. The ALJ noted that Plaintiff's straight leg raise test was positive bilaterally, her lumbar range of motion was limited, Plaintiff reported tenderness at L4-L5. Plaintiff's range of motion was normal throughout the rest of the musculoskeletal system, including the bilateral hips. Plaintiff had normal strength in all extremities, along with normal sensation. The ALJ acknowledged that Dr. Taiwo diagnosed Plaintiff with degenerative disc disease of the lumbar spine with bilateral radiculopathy but concluded that the radiculopathy diagnosis appeared to have been based on Plaintiff's subjective reports "given that the examination revealed normal strength, normal gait, and normal sensation."

Plaintiff argues Dr. Taiwo's finding that Plaintiff had positive bilateral straight leg testing results is consistent with radiculopathy and that the ALJ had no basis to conclude she was not suffering from radiculopathy. However, it is unclear how the ALJ's decision would have changed given Plaintiff's argument. Dr. Taiwo did not issue an opinion on

Plaintiff's abilities, and the ALJ considered his examination in its entirety. The ALJ did not commit reversible error in this regard.

Second, Plaintiff argues the ALJ erred in assessing Plaintiff's January 19, 2022, primary care visit. At that visit, Plaintiff's doctor noted "Negative" for musculoskeletal complaints. (R. 837). However, the doctor then noted a diagnosis of chronic low back pain with bilateral sciatica and ordered an x-ray for that reason. (R. 843-44, 849). When addressing this visit, the ALJ noted Plaintiff "had no musculoskeletal complaints at a January 19, 2022 primary care visit (5F/5). X-rays of the lumbar spine showed mild convex left lumbar curvature and mild degenerative changes (5F/17-18)." Plaintiff argues the ALJ wrongly claimed Plaintiff did not make any musculoskeletal complaints at her January 19, 2020, primary care visit, when in fact, Plaintiff's doctor ordered an x-ray in response to a complaint of back pain and symptoms.

The ALJ correctly recognized that the doctor noted "Negative" for musculoskeletal complaints. Although the ALJ did not note the diagnosis of chronic low back pain in that paragraph of her decision, the ALJ recognized Plaintiff experienced back pain throughout her decision and noted the results of the x-ray the doctor ordered. (R. 19-20). Plaintiff does not show how the ALJ's assessment of Plaintiff's January 19, 2022, visit constitutes reversible error.

Third, Plaintiff argues the ALJ improperly cited Plaintiff's denial of muscle pain, joint pain, and swelling at an April 22, 2022, doctor visit because the visit was for mouth lesions, not musculoskeletal problems. The ALJ reasonably evaluated the longitudinal treatment record as a whole, and this court "will not displace the ALJ's well supported

7

finding due to a single treatment note." *Brooks v. Berryhill*, 2018 WL 10216100, at *2 (C.D. Ill. February 26, 2018).

Fourth, Plaintiff argues that the ALJ discounted the significance of CT findings from April 2023 of Plaintiff's lumbar spine. However, the ALJ evaluated that CT scan, noting, "CT of the lumbar spine found severe right L5-S1 neural foraminal stenosis with marked compression of the exiting right L5 nerve root, as well as moderate right L4-L5 neural foraminal stenosis (13F/10-11). The claimant was treated with pain medication and discharged home with instructions to follow up with a spine specialist (12F/9)." While Plaintiff argues the ALJ should have given more significance to the CT findings, this explicit weighing is "precisely within the purview of the ALJ—and it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijhakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

Finally, Plaintiff argues that the ALJ wrongly relied on Plaintiff's activities to undercut her pain allegations. Here, the ALJ noted Plaintiff had maintained a fairly active lifestyle, including babysitting her young grandchild and visiting family out of state. Plaintiff argues the ALJ ignored the fact that Plaintiff testified she could no longer lift her grandson and that while she used to babysit him, she now always had another person present. Also, Plaintiff argues the ALJ had no information about the family visit to conclude it was inconsistent with Plaintiff's pain allegations.

"While an ALJ may err if he misrepresents the nature of her activities by ignoring limitations on or consequences of those activities … remand is not required simply because the ALJ did not explicitly restate every qualification the claimant placed on her

8

activities." *Hogden v. Kijakazi*, 2022 WL 43328, at *5 (E.D. Wis. Jan. 5, 2022). While the ALJ did not restate every qualification Plaintiff placed on her activities, the ALJ did not materially misrepresent the nature of Plaintiff's activities. Further, Plaintiff does not explain how any of the ALJ's alleged failures prejudiced Plaintiff. The ALJ did not commit reversible error here.

### C. Opinion Evidence

Plaintiff argues the ALJ erred by rejecting the opinions of state agency psychologists that Plaintiff could perform only one to two step tasks without analyzing the opinions' supportability and consistency with the evidence. Plaintiff argues this is prejudicial because the limitation to one to two step tasks would have precluded the jobs the VE identified.

The ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The Regulations specify that the supportability and consistency of the opinion are the most important factors and that the ALJ will explain how she considered these two factors. 20 C.F.R. § 404.1520c(b)(1). The question on appeal is not whether the ALJ used the specific terms "consistency" and "supportability," but whether the ALJ addressed those factors in her decision. *See Rowden v. Kijakazi*, 2022 WL 1184082, at *5 (E.D. Wis. Apr. 20, 2022).

9

Here, the ALJ noted that the state-agency psychologists found, relevant here, that Plaintiff would have difficulty carrying out detailed instructions and maintaining attention and concentration for extended period and was limited to performing simple, one and two step tasks. The ALJ found the one to two step task limitation not persuasive.

While the ALJ did not use the words "supportability" and "consistency," the ALJ addressed those factors. As to supportability, the ALJ articulated that there was "no medical support" for such a limitation. As to consistency, the ALJ explained that Plaintiff's only treatment for mental health issues had been medication from her primary care provider with a good response and that Plaintiff did well at the psychological consultative examination. "By pointing to the lack of supporting evidence and the inconsistency with other evidence, the ALJ adequately addressed the required factors under 20 C.F.R. § 416.920c." *Jeanine J. v. Kijakazi*, 2022 WL 4483812, at *7 (C.D. Ill. Sept. 27, 2022). Thus, the ALJ did not err in this regard.

## II. Conclusion

In conclusion, the Commissioner's decision is reversed, and pursuant to § 405(g), sentence four, this matter is remanded for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

ENTERED this 8th day of September, 2025.

s/COLIN S. BRUCE<br>UNITED STATES DISTRICT JUDGE